**Jennifer L. BARKO, Appellant,**

v.

**Robert B. GENZEL, M.D., Appellee.**

**No. 11–02–00237–CV.**

Court of Appeals of Texas,
Eastland.

Sept. 25, 2003.

Charles Klein, Attorney At Law, Dallas, TX, Janice M. Reeves, Hannah, Colvin &

Pipes, L.L.P., Attorneys At Law, Baton Rouge, LA, for appellant.

D. Wade Emmert, Joann N. Wilkins, Jeffrey W. Shell, Robert Begert, Dallas, TX, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

W.G. ARNOT, III, Chief Justice.

This case involves the former Medical Liability and Insurance Improvement Act's (hereinafter "the former Act") expert report requirements. See TEX. REV. CIV. STAT. ANN. art. 4590i, section 13.01, repealed by Act of June 2, 2003, 78th Leg., R.S., H.B. 4, §§ 10.01, 10.09, 23.02(a) (amended and codified at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351, effective September 1, 2003). The trial court dismissed Jennifer L. Barko's medical malpractice claims after it determined that she did not file an expert report which satisfied the former Act's requirements. Appellant challenges the trial court's determination in a single issue. We affirm.

Appellant alleges in her petition that she went to the emergency room of Columbia Medical Center of Plano, a Subsidiary, L.P., d/b/a Medical Center of Plano (the "hospital") on October 26, 1999, complaining of a back injury. Dr. Robert B. Genzel treated appellant in the emergency room. Appellant reported to Dr. Genzel that she felt something pop in her back while exercising at home. She had previously undergone an L4–L5 lumbar laminectomy in 1996. She also advised Dr. Genzel that she was pregnant. After prescribing various pain medications, Dr. Genzel discharged appellant from the emergency room with instructions to follow up with her neurosurgeon.

Appellant returned to the emergency room on October 27, 1999, whereupon Dr. Genzel re-examined her. Appellant reported on the second visit that her pain had worsened and that she had developed a foot drop. Dr. Genzel prescribed additional pain medication. He then discharged appellant from the second visit with instructions for her to follow up with her neurosurgeon.

Appellant was examined by her neurosurgeon on October 28, 1999. She alleged that the neurosurgeon diagnosed a large disc re-herniation with significant L5 nerve damage to the left side. Surgery to repair the injury occurred on October 29, 1999. Appellant also suffered a miscarriage on October 29, 1999.

Appellant contends that Dr. Genzel failed to timely diagnose and treat her back injury. She additionally asserts that the negligent acts and omissions of Dr. Genzel and the employees of the hospital caused the miscarriage. In addition to the miscarriage, appellant contends that she suffered permanent neurologic damage as a result of the alleged delay in diagnosis.

Appellant filed suit against Dr. Genzel and the hospital on July 16, 2001. She filed two expert reports prepared by Dr. Mark C. Smedley, M.D., of Loomis, California, in an attempt to comply with the former Act's expert report requirements. Dr. Genzel and the hospital filed motions to dismiss appellant's claims which challenged the sufficiency of Dr. Smedley's reports. The trial court granted the motions to dismiss in a written order which stated as follows: "The Court finds that the first and second reports of Dr. Smedley are inadequate as to causation/injury as to [the hospital] and Robert B. Genzel, M.D."[1] Appellant now appeals from the

---

1. There is a dispute as to whether the trial court permitted the untimely filing of Dr. Smedley's second expert report. This controversy is immaterial to the resolution of this

order of dismissal with respect to her claims against Dr. Genzel.[2]

The Texas Supreme Court has issued two recent opinions which address challenges to the sufficiency of an expert report filed in support of a medical malpractice action: *Bowie Memorial Hospital v. Wright,* 79 S.W.3d 48 (Tex.2002), and *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873 (Tex.2001). As noted in *Bowie Memorial Hospital v. Wright, supra* at 51:

> Medical-malpractice plaintiffs must provide each defendant physician and health-care provider an expert report with the expert's curriculum vitae, or they must voluntarily nonsuit the action. See TEX.REV.CIV.STAT. art. 4590i, § 13.01(d); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX.REV.CIV.STAT. art. 4590i, § 13.01(r)(6). If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion *"only if* it appears to the court, after hearing, that the report does not represent a *good faith effort* to comply with the definition of an expert report in Subsection (r)(6) of this section." TEX.REV.CIV.STAT. art. 4590i, § 13.01(*l*) (emphasis added).

We recently discussed the Act's expert-report requirement for medical-malpractice cases. See *Palacios,* 46 S.W.3d at 877–80. In *Palacios,* we explained that, when considering a motion to dismiss under section 13.01(*l*), "[t]he issue for the trial court is whether 'the report' represents a good-faith effort to comply with the statutory definition of an expert report." *Palacios,* 46 S.W.3d at 878. To constitute a "good-faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Palacios,* 46 S.W.3d at 879.

The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Palacios,* 46 S.W.3d at 878. The report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three elements that the Act identifies: standard of care, breach, and causal relationship. *Palacios,* 46 S.W.3d at 878. A report cannot merely state the expert's conclusions about these elements. *Palacios,* 46 S.W.3d at 879. "[R]ather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999).

We review a trial court's order dismissing a claim for failure to comply with section 13.01(d)'s expert-report requirements under an abuse-of-discretion standard. *Palacios,* 46 S.W.3d at 878. A trial court abuses its discretion if it acts in an arbitrary or unreasonable

---

appeal because the two expert reports are virtually identical regarding the issue of causation.

2. Appellant previously dismissed the appeal arising from her claims against the hospital.

manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment. See *Flores v. Fourth Ct. of Appeals,* 777 S.W.2d 38, 41 (Tex. 1989). (Emphasis in original)

As was the case in *Wright,* the trial court in this matter was required to determine whether appellant filed an expert report which constituted a good-faith effort to fairly summarize the causal relationship between Dr. Genzel's alleged breach and appellant's alleged injury. Dr. Smedley began his reports by listing the medical records that he had reviewed in order to prepare the reports. He then provided a detailed synopsis of the relevant medical records. The next section of Dr. Smedley's reports is labeled "Discussion/Analysis." With respect to appellant's first visit to the emergency room on October 26, 1999, Dr. Smedley stated that Dr. Genzel properly evaluated appellant's condition. Dr. Smedley found fault with Dr. Genzel's treatment on the second visit. Dr. Smedley asserted that Dr. Genzel should have ordered an MRI examination in the face of worsening neurological signs and symptoms. Dr. Smedley's second report concludes with the following section labeled "Opinion":

> Dr. Genzel violated standards of Emergency Medical practice by not exercising due diligence in his second physical examination and not performing a thorough and accurate neurological exami-

nation, thusly missing the patient's progressing foot drop, and not proceeding to neurological consultation and the consideration of diagnostic imaging with consultation and clearance by obstetric consultation. The medical record is inaccurate and inconsistent. There is a lay description by phone of "the L foot turning in" and a sister who is an RN observed "worsening foot drop" 2 hours after the 10–27–99 visit. These violations of the standards of emergency medical practice were a proximate cause in this patient's injury.[3]

Standing alone, the final sentence of Dr. Smedley's reports is insufficient to satisfy the expert report requirements outlined in *Wright* and *Palacios* because it merely stated the expert's conclusions about causation. *Bowie Memorial Hospital v. Wright, supra* at 52–54; *American Transitional Care Centers of Texas, Inc. v. Palacios, supra* at 879.

The injuries for which appellant seeks a recovery primarily consist of permanent neurological damage and the miscarriage. Dr. Smedley's reports do not link the miscarriage to Dr. Genzel's care. With respect to the alleged permanent neurological damage, appellant argues that the reports sufficiently address causation because they detail her progressively deteriorating condition following Dr. Genzel's examination. However, the reports do not indicate that appellant would have satisfactorily recovered from the back injury but for Dr. Genzel's alleged negligence. The reports do not state that back surgery would have been avoided

---

**3.** The "Opinion" section of Dr. Smedley's first report reads:

> Dr. Genzel violated standards of Emergency Medical practice by not exercising due diligence in his second physical examination and missing the patient's progressing foot drop. The medical record is inaccu-

rate and inconsistent. There is a lay description by phone of "the L foot turning in" and a sister who is an RN observed "worsening foot drop" 2 hours after the 10–27–99 visit. These violations of the standards of emergency medical practice were a proximate cause in this patient's injury.

without Dr. Genzel's alleged negligence. Furthermore, the reports make no attempt to eliminate either the back injury itself or the attempt to surgically repair it as a potential cause of the permanent neurological damage. After reviewing Dr. Smedley's reports, we conclude that the trial court could have reasonably determined that the reports did not represent a good-faith effort to summarize the causal relationship between Dr. Genzel's alleged failure to meet the applicable standards of care and appellant's alleged injuries. Appellant's sole issue is overruled.

The trial court's judgment is affirmed.