COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-188-CV

 

 

ASHRAF
FARISHTA, INDIVIDUALLY                                        APPELLANT

AND
AS NEXT FRIEND FOR 

INAYA FARISHTA                                                                                

 

                                                   V.

 

TENET
HEALTHSYSTEM HOSPITALS                                         APPELLEE

DALLAS,
INC. D/B/A TRINITY 

MEDICAL CENTER                                                                               

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








In one issue, Appellant
Ashraf Farishta (AAshraf@), Individually and as Next Friend for Inaya Farishta (AInaya@), asserts
that the trial court abused its discretion, Aby looking beyond the four corners of the expert reports, in [an]
effort to strike [P]laintiff=s expert reports under ' 74.351.@  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351 (Vernon Supp. 2006). 
While we are not completely certain of the meaning of this issue in the
context of the briefing, we agree that the trial court must look only to the four
corners of the expert report to determine its adequacy.  See Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52
(Tex. 2002). 
We will construe the issue within the context of the briefing to mean
the trial court abused its discretion in striking the Plaintiff=s expert reports for not meeting the statutory requirements.  See Tex.
R. App. P. 38.9.  We reverse and
remand to the trial court.

II.  Factual Background

This is the GBS case.  Ashraf gave birth to Inaya on August 4, 2003
at Trinity Medical Center (ATrinity@).  Inaya developed early onset Group B Streptococcus
infection (AGBS@) at birth.  As a result of
Inaya=s GBS infection, she developed multiple complications including
respiratory distress, cyanosis, and pneumonia requiring intubation and
prolonged hospitalization.

In August of 2002, one year
prior to Inaya=s birth, the
United States Government=s Centers
for Disease Control (ACDC@) had published Clinical Practice Guidelines and Recommendations
entitled APrevention
of Perinatal Group B Streptococcal Disease.@  The CDC recommendations were
based upon critical appraisal of multi-state population-based observational
data and several studies from individual institutions.  The CDC Guidelines indicated the following:








Obstetric care [providers],
in conjunction with supporting laboratories and labor and delivery facilities,
should adopt the following strategy for the prevention of perinatal GBS disease
based on prenatal screening for GBS colonization.  The risk-based approach is no longer an
acceptable alternative except for circumstances in which screening results are
not available before delivery.  All
pregnant women should be screened at 35-37 weeks= gestation for vaginal and rectal GBS colonization.  At the time of labor or the rupture of
membranes, intrapartum chemoprophylaxis should be given to all pregnant women
identified as GBS carriers. [Emphasis supplied.]

The American College of
Obstetricians and Gynecologists (AACOG@) adopted
the CDC Recommendations and Guidelines, issuing the following statement: 

The [ACOG] has issued new
recommendations calling for universal screening of pregnant women for [GBS], a
leading cause of illness and death among newborns in the United States.  Previously, ACOG and other experts had
recommended two options for identifying women with GBS: either a culture
screening at 35-37 weeks of pregnancy or assessment of clinical risk factors at
the time of labor. . . .  The change in
clinical practice follows new data and recommendations from the federal Centers
for Disease Control and Prevention (CDC) that show routine prenatal screening
is significantly more effective than the risk-based approach, resulting in far
fewer cases of early-onset GBS disease in newborns (occurring during the first
week of life).  In light of the new data,
the risk-based strategy, except in certain circumstances, is no longer an
acceptable alternative . . . .  The
committee opinion supports the CDC=s newly revised guidelines that create a screening-based approach for
the prevention of early onset GBS disease in the newborn be adopted. [Emphasis supplied.]








The American Academy of
Pediatrics (AAAP@) also adopted the CDC guidelines and issued a physician statement endorsement:
AThe [AAP] endorses and accepts as its policy the sections of this
Statement as it relates to infants and children.@  The report was published in
August 2002. 

Despite the foregoing, Ashraf
asserted that neither Dr. Ahmad, her obstetrician, nor Trinity performed the
prenatal GBS testing and screening on her. 
As a result, the GBS colonization of Ashraf=s birth canal was not identified, prophylactic antibiotic therapy was
not administered during labor, and Inaya contracted a GBS infection at birth
suffering a multitude of complications.

Ashraf sued Trinity, alleging
that Trinity=s failure to
adopt, implement, and enforce the universal GBS culture-based screening
protocol, as recommended by the CDC, ACOG, and AAP, was a breach of the
standard of care and that she and Inaya were damaged as a result.

In support of these
allegations, Ashraf filed three expert reportsCan original by Dr. Hunter Hammill, an addendum to the Hammill report,
and a report by hospital consultant Arthur S. Shorr.  Regarding causation, the original Hammill
report said in part:








[T]he
injuries to [Inaya] were directly related to [Dr. Ahmad=s]
failure to follow the standard of care in place in August 2003.  In reasonable medical probability, [Ashraf=s]
GBS colonization would likely have been identified had Dr. Ahmad ordered the
requisite GBS culture screen, and thereafter, prophylactic antibiotic therapy
during labor would have prevented [Ashraf=s] GBS infection.  Dr. Ahmad=s
failure to follow the standard of care caused [Inaya=s]
respiratory distress, cyanosis, pneumonia, and other injuries she sustained at
birth due to early onset GBS.  [Emphasis supplied.]

 

Dr. Hammill=s addendum to his original report said in part:

In
reasonable medical probability, [Ashraf=s] GBS colonization would
likely have been identified had [Trinity] adopted, implemented, and enforced
the requisite GBS culture screen at the 35-37 weeks; and thereafter, prophylactic
antibiotic therapy during labor would have been initiated in response to
the positive culture, and would have prevented [Inaya=s]
GBS infection. [Trinity=s] negligence in failing to
require its obstetricians practicing within its facility to follow a universal
GBS culture-based screening protocol and further failure to require the
administration of prophylactic antibiotics (Penicillin) therapy during labor,
in the absence of GBS culture status results, was negligent and such
negligence was a proximate cause of [Inaya=s]
respiratory distress, cyanosis, pneumonia, and other injuries sustained at
birth due to early onset GBS.  [Emphasis supplied.]

 

Trinity asserts that the Hammill addendum did
little to elaborate on the subject of causation because it merely stated that
the hospital=s failure to
require Dr. Ahmad to employ universal screening and administer prophylactic
antibiotics was negligent and that Asuch negligence was a proximate cause of [Inaya=s] respiratory distress, cyanosis, pneumonia, and other injuries she
sustained at birth due to early onset GBS,@ and that this was insufficient.








Ashraf=s hospital administration expert, Shorr, indicated in his report that
Trinity had the authority to require that obstetricians on its medical staff
provide evidence of negative GBS screening results for all patients admitted to
the hospital for labor and delivery, and if such evidence was not provided by
the time of admission, to require that such patients be treated with
appropriate antibiotics upon admission. 
Trinity asserts that the Shorr report was similarly conclusory with
respect to causation, stating merely that A[b]aby [Inaya] was exposed to GBS, and suffered significant injuries
as a result of GBS exposure during delivery.@  Moreover, Trinity points out
that unlike Dr. Hammill, Shorr is not a physician, but instead, a healthcare
administration consultant.  Dr. Hammill=s report also stated that the hospital had the authority and its own
independent obligation to require the practitioners using its labor and
delivery facilities, including Dr. Ahmad, to meet this minimum level of care.

The trial court sustained
Trinity=s objections to Ashraf=s expert reports and granted its motion to dismiss pursuant to section
74.351 of the Texas Civil Practice and Remedies Code.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351.  Subsequently, the
trial court granted Trinity=s motion to sever.  This appeal
followed.

III. Dismissal

In her single issue, we
construe that Ashraf complains that the trial court erred in finding her expert
reports to be statutorily inadequate and dismissing her case for that
reason.  Trinity responds that Ashraf=s expert reports were conclusory as to causation in general and that
they established no link between Trinity=s alleged conduct and Inaya=s future injuries alleged by Ashraf.








A.  Standard of Review

A trial court=s decision on a motion to dismiss a case under section 74.351 of the
Texas Civil Practice and Remedies Code is reviewed under an abuse of discretion
standard.  Am. Transitional Care Ctrs.
of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (applying former
article 4590i).  A trial court abuses its
discretion only when it acts in an arbitraty or unreasonable manner without
reference to any guiding principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241S42 (Tex. 1985), cert. denied, 476 U.S. 159 (1986).  Under this standard, the court of appeals
will not merely substitute its judgment for that of the trial court.  See Flores v. Fourth Court of Appeals, 777
S.W.2d 38, 41 (Tex. 1989). 

B.  The Reports

Plaintiff=s second amended petition, with respect to causation, alleges the
negligence in question was Aa proximate cause of Inaya[=s] GBS infection, related injuries, illness, developmental impairment,
and damages,@ which
damages are then enumerated.  Trinity=s objections to Dr. Hammill=s report and its motion to dismiss complain that the report Aonly addresses causation on the part of the hospital in a single
sentence at the end of the addendum to his report.  Further, the one sentence regarding causation
is merely conclusory and simply does not satisfy the statutory requirements.@








AExpert
report@ is defined in section 74.351 as 

a
written report by an expert that provides a fair summary of the expert=s
opinions as of the date of the report regarding applicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.

 

Tex. Civ. Prac. &
Rem. Code '
74.351(r)(6).  Hence, the report has a
two-fold purpose: (1) to inform the defendant of the specific conduct that the
plaintiff has called into question, and (2) to provide a basis for the trial
court to conclude that the plaintiff=s claims have merit.  Bowie
Mem=l Hosp., 79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 879).  Further, Awhile the expert report does not need to marshal all the evidence
necessary to establish causation at trial, it must contain sufficiently
specific information to demonstrate causation beyond mere conjecture.@  Id.  








Likewise, the purpose of
requiring such a report is clearly to eliminate frivolous claims, akin to
meritless claims being eliminated by summary judgment motions.  See Palacios, 46 S.W.3d at 878.  Moreover, a plaintiff need not present
evidence in the report as if it were actually litigating the merits.  Id. at 879.  The report can be informal in that the
information in the report does not have to meet the same requirement as the
evidence offered in a summary judgment proceeding or at trial.  Windsor v. Maxwell, 121 S.W.3d 42, 54
(Tex. App.CFort Worth
2003, pet. denied).

A report may be held
inadequate as to causation only if it does not constitute a good faith effort
to provide a fair summary of the expert=s causation opinions.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6); Windsor, 121 S.W.3d at 54.  A[I]t is not enough that the expert report >provided insight= about the
plaintiff=s
claims.  Rather, to constitute a
good-faith effort to establish the causal-relationship element, the expert
report must fulfill Palacios=s two-part test.@  Bowie Mem=l Hosp., 79 S.W.3d at 52 (citation
omitted); see supra p. 8.  And, a
trial court is obligated to grant a challenge to the sufficiency of an expert
only if the report Adoes not
represent an objective good faith effort to comply@ with the requisites of the statute. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(l);
Ne. Med. Ctr. v. Crooks, No. 06-05-149-CV, 2006 WL 1358361, at *5 (Tex.
App.CTexarkana May 19, 2006, no pet.) (mem. op.).  However, the expert Amust explain the bases of the statements [made regarding causation]
and link his or her conclusions to the facts.@  Longino v. Crosswhite,
183 S.W.3d 913, 917S18 (Tex.
App.CTexarkana 2006, no pet.) (citing Bowie Mem=l Hosp., 79 S.W.3d at 52).

 

 








C.  Analysis-Causation in General

With regard to the adequacy
of Dr. Hammill=s report,
Trinity=s specific position, as stated by it, is as follows: 

It
was not incumbent upon the district court to assume that Inaya=s GBS
caused respiratory distress, cyanosis, pneumonia and other injuries sustained
at birth.  To the contrary, it was
incumbent upon [Ashraf] to provide an expert report which explained the basis
of the expert=s
statements to link his conclusion (that [Trinity=s]
negligence caused GBS) to the facts (that Inaya experienced respiratory
distress, cyanosis, pneumonia and Aother injuries sustained at
birth.@).

 

Ashraf responds that she Awould show that Dr. Hammill=s report clearly and explicitly links [Trinity=s] negligence to Inaya[>s] respiratory distress, cyanosis, pneumonia, and other injuries she
sustained at birth due to her early onset GBS. 
This, alone, plainly satisfies the causation requirement set forth under
the statute.@  We agree with Ashraf.

In Bowie Memorial Hospital
v. Wright, the expert=s report on
causation stated that Aif the
x-rays would have been correctly read and the appropriate medical personnel
acted upon those findings then Wright would have had the possibility of a
better outcome.@  79 S.W.3d at 52S53.  After examining the expert=s report, the court went on to observe the following:








After reviewing this report, we conclude that the
trial court could have reasonably determined that the report does not represent
a good-faith effort to summarize the causal relationship between Bowie=s
failure to meet the applicable standards of care and Barbara=s
injury.  That is because the report
simply opines that Barbara might have had Athe possibility of a better
outcome@
without explaining how Bowie=s conduct caused injury to
Barbara. . . .  Because the report lacks
information linking the expert=s conclusion (that Barbara
might have had a better outcome) to Bowie=s alleged breach (that it did
not correctly read and act upon the x-rays), the trial court could have
reasonably determined that the report was conclusory.  A conclusory report does not meet the Act=s
requirements, because it does not satisfy the Palacios test.

 

Id. at 53
(citations omitted).  








Likewise, in Barko v.
Genzel, the expert report on the issue of causation consisted of one
sentence, stating that A[t]hese
violations of the standards of emergency medical practice were a proximate
cause in this patient=s injury.@  123 S.W.3d 457, 460 (Tex. App.CEastland 2003, no pet.). 
The court went on to observe that A[s]tanding alone, the final sentence of Dr. Smedley=s reports is insufficient to satisfy the expert report requirements
outlines in Wright and Palacios because it merely stated the
expert=s conclusions about causation. . . . 
Dr. Smedley=s reports do
not link the miscarriage to Dr. Genzel=s care.@  Id. 
        We find that these cases
cited by Trinity are distinguishable. 
They are the equivalent of Dr. Hammill having opined that the failure to
test for GBS caused respiratory distress and the other injuries.  His report goes further.  In sum, Dr. Hammill=s report indicates that the standard of care was to perform certain
tests on Ashraf, that the tests were not performed nor were they required by
Trinity, that the failure to perform or require these tests allowed a GBS
infection to be present in Inaya, that this infection caused respiratory
distress, cyanosis, pneumonia, and other injuries, and that the initiation of
appropriate antibiotic therapy would have prevented the infection.  We hold that this report constituted a good
faith effort to summarize the causal relationship between the failure to test
for GBS and the alleged enumerated injuries suffered by Inaya, that the trial
court could not have reasonably determined that the report does not represent a
good-faith effort to summarize the causal relationship, and that the trial
court therefore abused its discretion in striking Dr. Hammill=s affidavit for failure to meet the Palacios tests.  

D.  Analysis-Causation as to
Enumerated Injuries Not Addressed by Dr. Hammill

 








Again, Ashraf=s second amended petition, with respect to causation, alleges the
negligence in question was Aa proximate cause of Inaya Farishta=s GBS infection, related injuries, illness, developmental impairment,
and damages.@  Dr. Hammill=s report states that the breach of the standard of care caused Arespiratory distress, cyanosis, pneumonia, and other injuries she
sustained at birth,@ and that Aprophylactic antibiotic therapy during labor would have been initiated
in response to the positive culture, and would have prevented Inaya=s GBS infection.@  Comparing his reports to the alleged and pled
results of the breach of the standard of care, it is seen that the report fails
to address Aillness,@ other than the specifically enumerated illnesses, and fails to address
Adevelopmental impairment.@  Hence, these alleged results
of the breach of standard of care as pled have not been properly addressed
through an expert report and should be dismissed.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(l).

A similar result was reached
in Northeast Medical Center v. Crooks. 
Mr. Crooks fell out of his bed on more than one occasion, was injured,
and eventually died.  The expert=s report provided in the case stated that a breach of the standard of
care Aproximately caused the left hip fracture that started the slow
deterioration of this 78 year old patient with multiple medical problems, who
could not survive the challenges of a hip fracture, surgery, and significant
recovery period.@  Crooks, 2006 WL 1358361, at *5.  The court found that the death was not
properly causally linked by the expert report to the breach of the standard of
care, but that the adequacy of the expert report as to causation in the
survival cause of action based on Mr. Crooks=s injuries from falling out of the bed had not even been challenged.  Id. 
Hence, the court sustained the dismissal of the wrongful death cause of
action but remanded the case to the trial court on the survival action.  Id.








Accordingly, we sustain the
dismissal of Ashraf=s case with
regard to injuries other than those enumerated in the Dr. Hammill=s report, as previously set forth herein. 

With regard to the Shorr
report, it is axiomatic that a nonphysician may not opine on medical causation
matters, and to the extent a portion of his report attempted to do so, the
objection to that portion was properly sustained.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.403(a) (Vernon 2005).  

We sustain Ashraf=s sole issue as to causation of Inaya=s respiratory distress, cyanosis, pneumonia, and other injuries
sustained at birth, but we overrule it as to the other injuries alleged in her
second amended petition.

IV.  Conclusion

Having sustained Ashraf=s sole issue in part, and overruled it in part, this cause is reversed
and remanded to the trial court for further proceedings consistent with this
opinion.  

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and MCCOY, JJ.

 

DELIVERED:  January 25, 2007