In The



Court of Appeals



Ninth District of Texas at Beaumont



________________



NO. 09-08-00435-CV


 _____________________



SUSAN KAY CRAIG AND MID COUNTY FAMILY PHYSICIANS 


ASSOCIATES, L.L.P., Appellants



V.



THOMAS DEARBONNE, INDIVIDUALLY AND AS WRONGFUL DEATH


BENEFICIARY OF BETTY DEARBONNE, Appellee








On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-178,682 






MEMORANDUM OPINION


 This appeal involves the adequacy of an expert report in a healthcare liability claim. 
See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008). We affirm the trial
court's order denying appellant's motion to dismiss. 

 Thomas Dearbonne, individually and as wrongful death beneficiary of Betty
Dearbonne, sued appellants Susan Kay Craig, M.D. and Mid County Family Physicians
Associates. Plaintiff alleged in his petition that Betty was admitted to Mid-Jefferson Hospital
on January 25, 2005, after visiting the emergency room with complaints of difficulty
breathing, pleuritic pain, fever, and chills. According to plaintiff's petition, Dr. Craig noted
at that time that Betty had a several-week history of upper respiratory infection and shortness
of breath, and she diagnosed Betty with right-sided pneumonia. The petition further alleged
that Betty's condition deteriorated after she was admitted to the hospital, and that a 
cardiologist subsequently diagnosed her with arterial occlusion and Acute Respiratory
Distress Syndrome (ARDS). Betty Dearbonne died on February 2, 2005. Plaintiff alleges
that appellants' negligence proximately caused Betty's death, and plaintiff seeks damages
under the Texas Wrongful Death Act.

 Plaintiff filed an expert report by Lige B. Rushing, Jr., M.D. See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008). Appellants filed a motion to dismiss
challenging Dr. Rushing's qualifications and arguing that the report's statement of causation
was conclusory. The trial court denied the motion and appellants filed an interlocutory
appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9). This Court reversed that
order and remanded the case to the trial court for consideration of whether to permit a thirty-day extension to cure deficiencies in the report. Craig v. Dearbonne, 259 S.W.3d 308, 313
(Tex. App.--Beaumont 2008, no pet.); see also Tex. Civ. Prac. & Rem. Code Ann. §
74.351(l) (Vernon Supp. 2008); Leland v. Brandal, 257 S.W.3d 204, 207 (Tex. 2008). The
trial court granted the extension, and plaintiff timely presented a supplemental report. 
Appellants filed a second motion to dismiss. The trial court denied the motion, and
appellants filed this interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(9). 

 A plaintiff asserting a healthcare liability claim must provide an expert report to each
defendant physician or healthcare provider against whom he asserts a healthcare liability
claim. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008). The expert
report must provide a fair summary of the expert's opinions, as of the date of the report, on
the applicable standards of care, the manner in which the care rendered by the physician or
healthcare provider failed to meet the standards, and the causal relationship between that
failure and the injury, harm, or damages claimed. Id. § 74.351(r)(6) (Vernon Supp. 2008). 
The report must discuss the three elements with sufficient specificity to inform the defendant
of the conduct the plaintiff has questioned, and to provide a basis for the trial court to
conclude the claims are meritorious. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 875 (Tex. 2001). The report need not marshal all of the plaintiff's proof, but
must include the expert's opinion on each of the statutory elements. Id. at 878. The trial
court shall grant a motion challenging an expert report's adequacy "only if it appears to the
court, after hearing, that the report does not represent an objective good faith effort to comply
with the definition of an expert report in Subsection (r)(6)." Tex. Civ. Prac. & Rem Code
Ann. § 74.351(l). The court limits its adequacy inquiry to the four corners of the report. 
Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002).

 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. Palacios, 46 S.W.3d at 878. The trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding
rules or principles. Wright, 79 S.W.3d at 52.

 A witness may be qualified as an expert on the issue of whether a physician departed
from standards of medical care only if the person is a physician who: (1) is practicing
medicine at the time of the testimony or at the time the claim arose; (2) has knowledge of
accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury,
or condition involved in the claim; and (3) is qualified on the basis of training or experience
to offer an expert opinion regarding those accepted standards. Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(r)(5)(A) (Vernon Supp. 2008); § 74.401(a) (Vernon 2005). In deciding
whether a witness is qualified on the basis of training or experience, a trial court must
consider whether, at the time the claim arose or at the time the testimony is given, the
witness: "(1) is board certified or has other substantial training or experience in an area of
medical practice relevant to the claim; and (2) is actively practicing medicine in rendering
medical care services relevant to the claim." Tex. Civ. Prac. & Rem. Code Ann. §
74.401(c) (Vernon 2005). To express expert opinion testimony on causation in healthcare
liability cases against physicians, the expert must be a physician and "otherwise qualified to
render opinions on such causal relationship under the Texas Rules of Evidence[.]" Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(r)(5)(C) (Vernon Supp. 2008). Under the Texas Rules
of Evidence, a witness must have knowledge, skill, experience, training, or education
regarding the specific issue before the court. Broders v. Heise, 924 S.W.2d 148, 153 (Tex.
1996); see also Tex. R. Evid. 702. 

 In his initial report, Dr. Rushing opined "that the most likely sequence of events in this
case based on reasonable medical probability is that [Betty] actually died from pneumonia,
congestive heart failure, sepsis and adult respiratory distress syndrome." In his supplemental
report, Dr. Rushing provided an explanation as to what treatment would have prevented
Betty's death and how the failure of Dr. Craig to provide proper treatment, in reasonable
medical probability, was a cause of Betty's death.

 In issue one, appellants maintain the trial court abused its discretion in finding that
there is a sufficient factual basis for Dr. Rushing's causation opinion that, but for the alleged
negligence of Dr. Craig, Betty would have received certain treatments from pulmonology and
cardiology specialists that would have identified the cause of her medical complications and
prevented her death. In issue two, appellants argue the trial court abused its discretion in
finding Dr. Rushing's report provided a sufficient basis for the court to conclude there is
merit to appellee's claim that different care by appellants would have cured Betty. We
address issues one and two together. (1) 

 Dr. Rushing's report states that the standard of care required that Dr. Craig examine
Betty on a daily basis after her admission to the hospital on January 25, 2005. He stated the
examination should, at the least, include an examination of Betty's lungs. He noted that Dr.
Craig did not examine Betty at all on January 26, 2005, and nothing indicates she examined
Betty's lungs on January 27, 2005. Dr. Rushing noted that according to medical records,
there is no documentation that Dr. Craig listened to Betty's lungs or performed any type of
physical examination on January 28, 2005, even though the nurses' notes that day document
dyspnea associated with bilateral coarse rales/breath sounds. Dr. Rushing opined that if Dr.
Craig had closely monitored Betty and noted that her lung condition was not improving,
something observed by the nurses as documented by the medical records, the standard of care
would have required Dr. Craig to order chest x-rays on a daily basis to observe the extent to
which Betty's condition was deteriorating. Dr. Rushing stated that Dr. Craig did not order
daily chest x-rays, and by the time an x-ray was done on January 29, 2005, the
pneumonia/congestive heart failure had progressed as documented by the x-ray. 

 According to Dr. Rushing, if Dr. Craig had obtained cardiac and pulmonary
consultations no later than January 27, 2005, then "a more aggressive and appropriate
treatment plan would have been initiated as early as 01/27/05." Dr. Rushing then explained
in his report that the more aggressive and appropriate treatment plan would have included
(1) the insertion of a Swan-Ganz catheter to better monitor pulmonary arterial pressure and
to allow a better assessment of Betty's congestive heart failure; (2) an echocardiogram to
better define Betty's actual heart function, permitting more specific therapy to be directed
to a specific ailment such as systolic or diastolic dysfunction or valvular disease; and (3)
assessment of Betty's dyspnea, oxygen saturation, and degree of pulmonary edema, and
treatments including inhalation therapy with bronchodilators, steroids, and mucolytics. 

 Dr. Rushing concludes his report by stating that had Dr. Craig obtained daily chest x-rays, daily testing, and the appropriate physical examinations as required by the standard of
care, she would have realized Betty's condition was deteriorating, and the standard of care
would have required Dr. Craig to call in cardiac and pulmonary consults as of January 27,
2005. According to Dr. Rushing, if these consults had been made as of January 27, 2005,
Betty would have been transferred to ICU, where she would have received closer monitoring
and more aggressive treatment. Under those circumstances, Dr. Rushing explains, Betty
more likely than not would have survived the illness and would not have died when she did. 

 Dr. Rushing's report provides a fair summary of his opinions, as of the date of the
report, on the applicable standards of care, the manner in which the care rendered by
appellants failed to meet the standards, and the causal relationship between that failure and
the injury, harm, or damages claimed. See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(6). The report discusses the statutory elements with sufficient specificity to
adequately inform appellants of the specific conduct plaintiff has called into question and to
provide a basis for the trial court to conclude the claims are meritorious. See Palacios, 46
S.W.3d at 875. 

 Appellants claim that the medical records presented to the trial court demonstrate that
Betty received the treatment plaintiff claims would have prevented her death, and that Dr.
Rushing's report is deficient because he did not identify different or additional treatments
that were not provided. Even if some of the treatments recommended were performed, the
report asserts the x-rays, diagnostic tests, close monitoring, and the consults, along with the
required referral to ICU within two days of admission, were not. It was within the trial
court's discretion to determine that the report adequately explained different additional care
that should have been provided to Betty. There is no indication that Dr. Rushing's summary
is inaccurate simply because some of the treatment for Betty required by the standard of care,
though not all, may have been administered. The report identified the timing of the treatment
as an important factor. The report need not marshal all of the plaintiff's proof. See Palacios,
46 S.W.3d at 878. 

 Appellants also argue that Dr. Rushing's report provides no explanation of how the
recommended treatments would have cured Betty's primary medical problem during her last
days -- the formation of clots in her arteries and lungs. Appellants state that because Dr.
Rushing does not attempt to exclude Betty's clotting disorder as a cause of conditions which
ultimately resulted in her death, "his causation opinion is speculative, conclusory and
deficient." Appellants cite to Ballan v. Gibson, 151 S.W.3d 281 (Tex. App.--Dallas 2004,
no pet.), and Barko v. Genzel, 123 S.W.3d 457 (Tex. App.--Eastland 2003, no pet.), in
support of this argument. 

 In Ballan, a patient died in the emergency room as a result of arteriosclerotic
cardiovascular disease, and the plaintiffs brought suit alleging his doctor negligently failed
to treat five cardiac risk factors. Ballan, 151 S.W.3d at 283-84. The expert's report did not
state how the doctor's alleged failure to act regarding three of the risks caused Ballan's death,
nor did the report rule out the factors beyond the doctor's control as the cause of death. Id.
at 284. The Dallas Court of Appeals held that the expert report was conclusory and affirmed
the order granting the motion to dismiss. Id. 

 In Barko, the plaintiff sued her emergency room physician for failing to diagnose and
treat her disc re-herniation, which she asserted led to permanent neurological damage and a
miscarriage. Barko, 123 S.W.3d at 458. The Eastland Court of Appeals held that the report
was insufficient to satisfy the statutory requirements because it: (1) did not indicate that the
plaintiff would have recovered from the back injury but for the doctor's negligence; (2) did
not state that the back surgery would have been avoided but for the doctor's negligence; and
(3) did not make any attempt to eliminate either the back injury itself or the attempt to
surgically repair it as potential causes of the permanent neurological damage. Id. at 460-61. 
 The expert reports in Ballan and Barko are distinguishable from the report presented
here. Dr. Rushing's report states that Betty's death certificate lists the causes of death as
asystole, hypoxia, and atypical pneumonia. The report further states that, "[o]ther significant
conditions contributing to death, but not resulting in the underlying cause given above are
listed as congestive heart failure and arterial embolism." Dr. Rushing also provided the
following opinion as to the cause of death:

 It is my opinion that the most likely sequence of events in this
case, based on reasonable medical probability is that [Betty]
actually died from pneumonia, congestive heart failure, sepsis
and adult respiratory distress syndrome. The mechanism by
which this occurred is that [Betty]'s pneumonia and congestive
heart failure got progressively worse as documented by the chest
x-ray[']s findings, as a result of her pneumonia coupled with a
congestive heart failure, she developed sepsis. 


In sum, Dr. Rushing's report indicated the arterial embolism was a significant contributing
condition, but the arterial embolism did not lead to the conditions that Dr. Rushing believes
caused her death. See generally Arboretum Nursing and Rehab. Ctr. of Winnie, Inc., No. 14-07-00895-CV, 2008 Tex. App. LEXIS 3672, at *15 (Tex. App.--Houston [14th Dist.] May
22, 2008, no pet.) (mem. op.) (citing Chaupin v. Schroeder, No. 14-06-01102-CV, 2007 Tex.
App. LEXIS 5837, at *8 (Tex. App.--Houston [14th Dist.] July 26, 2007, no pet.) (mem.
op.)). We overrule issues one and two.

 Appellants contend in issue three that the trial court abused its discretion in finding
Dr. Rushing qualified to provide opinions on the cause of Betty's death or what treatment
would have prevented her death. Appellants contend that although an internist like Dr.
Rushing may have treated patients with pneumonia, there is nothing in Dr. Rushing's report
demonstrating he has any experience "in treating a patient with embolisms (clots) in [her]
arteries and lungs from an undetermined origin." According to appellants, "[w]hile a
hematologist, oncologist, immunologist, cardiologist or vascular surgeon" may have the
expertise to opine as to the cause of Betty's condition and death, Dr. Rushing's report and
curriculum vitae do not show that he has experience or training in treating patients in Betty's
circumstances and do not show that he is qualified to say what caused the clots, whether the
clots caused her death, or whether there is any treatment that would have stopped the
progression of the clots.

 Of course not every physician automatically qualifies as an expert in every area of
medicine. See Broders, 924 S.W.2d at 152. When a subject matter is common to areas of
practice and equally recognized in all fields of practice, then a qualified physician familiar
with the subject may testify to the standard of care. Blan v. Ali, 7 S.W.3d 741, 745-46 (Tex.
App.--Houston [14th Dist.] 1999, no pet.). Similarly, when a subject of inquiry is
substantially overlapped by multiple fields of practice, a physician in one of the fields may
sometimes be qualified to opine as to the standard of care for that procedure in another field. 
See generally Broders, 924 S.W.2d at 152. In determining an expert's qualifications to opine
concerning the standard of care, a court examines whether the expert has knowledge of the
specific condition involved in the claim. Blan, 7 S.W.3d at 746. 

 In his expert report, Dr. Rushing states that he is a practicing physician licensed by
the State of Texas and is board certified in internal medicine, rheumatology, and geriatric
medicine. He received his medical degree from Baylor University College of Medicine in
Houston, Texas, interned at Harris Hospital in Fort Worth, Texas, and received specialty
training in internal medicine and rheumatology at the Mayo Clinic in Rochester, Minnesota. 
He also states in the report that in the regular course of his practice, he "had occasion to
diagnose and treat patients with conditions substantially similar to or identical with [Betty]'s
in both the hospital and office setting." He notes that he has served as the primary care
physician for more than ten thousand hospitalized patients during his career, and many of
these patients have had the same types of problems as Betty Dearbonne. The trial court did
not abuse its discretion in finding the expert qualified to express the opinions explained in
the report. See Tex. R. Evid. 702; Broders, 924 S.W.2d at 153. We overrule issue three.

 We affirm the trial court's order denying appellants' motion to dismiss.

 AFFIRMED.

 DAVID GAULTNEY

 Justice

Submitted on January 5, 2009

Opinion Delivered February 12, 2009


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Appellants' brief outlines three arguments regarding Dr. Rushing's causation
opinions. We address these three arguments in our discussion of issues one and two.