Opinion filed June 11, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed June 11,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00274-CV 

                                                     __________

 

            GAYLA DEWS,
INDIVIDUALLY AND AS REPRESENTATIVE 

                            OF
THE ESTATE OF MARJORIE LENORE

                               BLACK
DEWS, DECEASED, Appellant

 

                                                             V.

 

                PALO PINTO
NURSING CENTER, L.P. ET AL, Appellees

 



 

                                          On
Appeal from the 29th District Court

 

                                                      Palo
Pinto County, Texas

 

                                                  Trial
Court Cause No. C41283

 



 

                                             M E M O R A
N D U M  O P I N I O N

 








Appellant
Gayla Dews, individually and as representative of the estate of Marjorie Lenore
Black Dews, deceased, brought this health care liability claim against Palo
Pinto Nursing Center, L.P.; David B. Ramsey, M.D.; Alice L. Ramsey, M.D.; and
Patrick W. Hisel, M.D.  Marjorie Dews died on June 26, 2004, and the claim was
filed on February 24, 2006.  Dews alleged that the doctors and the nursing home
failed to timely and properly diagnose and treat gastrointestinal bleeding from
a peptic ulcer suffered by her mother, Marjorie Dews, and that that failure
proximately caused her mother=s
death on June 26, 2004.

In
an attempt to comply with Tex. Civ.
Prac. & Rem. Code Ann. '
74.351 (Vernon Supp. 2008), Dews served appellees with the reports of
William R. Gardner, M.D. and Frances Lovett, R.N.  Appellees filed their
respective objections to Dews=s
expert reports and motions to dismiss with prejudice.  After a hearing on July
13, 2006, the trial court granted Palo Pinto Nursing Center=s motion to dismiss with
prejudice.  The court stated in its letter ruling that Athe report of Nurse Lovett [was] wholly
insufficient (both substantively and as to her qualifications) to satisfy the
requirements of the statutes.@ 
In that same December 19, 2006 letter ruling, the trial court found that
Dr. Gardner=s
report was deficient as to the doctors but granted Dews a 30-day extension to
file an amended report as to each individual physician.  See
Section 74.351(c).

Dews
filed an amended report by Dr. Gardner and filed a motion for the court to
reconsider its order dismissing Palo Pinto Nursing Center.  On June 20, 2007,
the trial court signed an order granting Palo Pinto Nursing Center=s objections to the reports
of Dr. Gardner and Nurse Lovett and dismissing Dews=s claim against Palo Pinto Nursing Center with
prejudice.  The court also signed orders granting the doctors= motions to dismiss with
prejudice.  We affirm.

The
Texas Medical Liability Act

In
2003, the Texas Legislature enacted the Texas Medical Liability Act.  See
Tex. Civ. Prac. & Rem. Code
Ann. ch. 74 (Vernon 2005 & Supp. 2008).  Section 74.351 requires a
plaintiff asserting a health care liability claim to submit an expert report,
along with the expert=s
curriculum vitae, as to each physician or health care provider named as a
defendant in the suit, no later than the 120th day after filing suit.  Section
74.351(r)(6) describes an expert report as a written report providing Aa fair summary of the
expert=s opinions . .
. regarding applicable standards of care, the manner in which the care rendered
by the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages
claimed.@








If
a plaintiff timely files an expert report and the defendant moves to dismiss
because of the report=s
inadequacy, the trial court must grant the motion Aonly if it appears to the court, after
hearing, that the report does not represent an objective good-faith effort to
comply with the definition of an expert report@
in Section 74.351(r)(6).  Section 74.351(l).  To constitute a Agood-faith effort,@ the report must provide
enough information to fulfill two purposes:  (1) it must inform the defendant
of the specific conduct the plaintiff has called into question and (2) it must
provide a basis for the trial court to conclude that the claims have merit.  Bowie
Mem=l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002); Am. Transitional Care Ctrs. of
Tex., Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex. 2001); Longino v.
Crosswhite, 183 S.W.3d 913, 916-17 (Tex. App.CTexarkana
2006, no pet.).  A report that merely states the expert=s conclusions about the standard of care,
breach, and causation does not meet the statutory requirements.  Wright,
79 S.W.3d at 52.  In determining whether the report represents a good-faith
effort, the trial court=s
inquiry is limited to the four corners of the report. 
Section 74.351(r)(6); Palacios, 46 S.W.3d at 878.

Standard
of Review

In
her first issue, Dews raises the question of whether the standard of review of
the trial court=s
rulings remains an abuse of discretion standard as the Texas Supreme Court held
in Palacios, 46 S.W.3d at 875.  Palacios and Wright dealt
with Tex. Rev. Civ. Stat. art.
4590i (1997) (repealed effective August 31, 2003), the predecessor statute to
the Texas Medical Liability Act.  We addressed the arguments in Kendrick v.
Garcia, 171 S.W.3d 698, 702-03 (Tex. App.CEastland
2005, pet. denied), where we held that this court will utilize the abuse of
discretion standard set forth in Palacios when we review a trial court=s ruling on a defendant=s motion to dismiss under
Section 74.351.  We will continue to do so until there is authority
to the contrary.  The first issue is overruled.

An
abuse of discretion occurs when a trial court acts in an arbitrary or
unreasonable manner or without reference to any guiding rules or principles.  Wright,
79 S.W.3d at 52.  A trial court does not abuse its discretion simply because it
may decide a matter within its discretion differently than an appellate court. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). 
However, a clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion.  Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992).

 

 








 Dr.
Gardner=s
Report

In
her third and fourth issues, Dews contends that the trial court abused its
discretion in ruling that the written expert report of Dr. Gardner was legally
insufficient and erred in dismissing her health care liability claims against
the appellees.  

In
his report, Dr. Gardner began by stating that he has substantial knowledge and
experience in the diagnosis, care, assessment, and treatment of elderly
patients with one or more bleeding ulcers and related complications, including
anemia.  Dr. Gardner described the standard of care that each of the three
doctors should have followed when in charge of the treatment of Marjorie Dews:
(1) each doctor should have immediately ordered a gastrointestinal
consult; (2) each doctor should have required an Aupper
GI series@; and (3)
each doctor should have recommended that Marjorie Dews refrain from taking
Ecotrin/aspirin.  All three doctors challenge Dr. Gardner=s report on the ground that
it did not describe with sufficient facts the causal relationship between his
statement of their breaches of the standard of care and the death of Marjorie
Dews.  Dr. Gardner addressed the causation element as follows:

It is clear from Ms.
Dews= medical records
that she had a painful and severe bleeding ulcer.  Dr. David Ramsey, Dr. Alice
Ramsey and Dr. Hisel each failed to appreciate the severity of the ulcer, and
never diagnosed the cause or specific source of the bleed.  If the above standards
of care had been met by Dr. David Ramsey, Dr. Alice Ramsey and Dr. Hisel, the
severity of Ms. Dews=
bleeding ulcer, as well as the cause and specific source of the bleed, would,
in reasonable medical probability, have been diagnosed.  If the severity of the
bleeding ulcer and cause and specific source of the bleed had been determined,
the bleed, in reasonable medical probability, would have been slowed or stopped
by surgery or medication.  Death can, and often does, occur quickly after the
onset of a bleeding ulcer due to excessive blood loss and related
complications.  If the bleed had been slowed or stopped before Ms. Dews= discharge from Palo Pinto
General Hospital on June 24, 2004, Ms. Dews=
death, in reasonable medical probability, would have been prevented. 
Additionally, bleeding ulcers are painful.  If the bleed had been slowed or
stopped before Ms. Dews=
discharge from Palo Pinto General Hospital on June 24, 2004, in reasonable
medical probability, Ms. Dews would not have suffered severe pain due to
the bleed.

 








It is my opinion
that the above described failures of David B. Ramsey, M.D.; Alice L. Ramsey,
M.D. and Patrick W. Hisel, M.D. to meet the reasonable, prudent and accepted
standards of medical care for a family practice physician in the diagnosis,
care and treatment of Ms. Dews was a probable cause of Ms. Dews= injuries, harm and death
for the reasons described above.  Also, I have considered the other potential
or possible causes of injury, harm and death to Ms. Dews, and ruled them out. 
My opinions in these regards are based upon my medical education, training,
experience, research, writing, applicable reliable medical literature and other
reasons set forth below.

 

Dr.
Gardner does not describe how he reached his conclusion that the bleeding was
severe or how the severity of the bleeding caused her death.  His report does
not contain facts documenting that Majorie Dews suffered from severe or
excessive blood loss.  Earlier in his report, Dr. Gardner stated that Dr. David
Ramsey and Dr. Alice Ramsey documented the gastrointestinal bleed in the chart
and that Marjorie Dews Aunderwent
numerous transfusions@
during her hospital admission.  He also stated that Dr. Alice Ramsey noted the
need to obtain a gastrointestinal consult if Majorie Dews Adid not respond to the
current treatment regimen.@ 
We are left to infer that Majorie Dews did or did not respond to the treatment;
we do not know from Dr. Gardner=s
report.  

In
essence, Dr. Gardner concludes that the doctors=
delay in obtaining a consult with a gastrointestinal specialist, delay in
immediately ordering an upper GI series, and failure to recommend that Marjorie
Dews refrain from taking Ecotrin/aspirin resulted in her death.  We do not have
an additional opinion by a gastrointestinal specialist that their delay caused
her death.  We can infer, but do not know, that an upper GI series would have
determined the cause or specific source of the bleed, but then we do not know
what steps the doctors should have taken.  It is not clear who Dr. Gardner
thinks should have slowed or stopped the bleeding.  Dr. Gardner only states
that, A[i]f the bleed
had been slowed or stopped before Ms. Dews=
discharge from Palo Pinto General Hospital on June 24, 2004, Ms. Dews= death, in reasonable
medical probability, would have been prevented.@ 
            Dr. Gardner=s
report indicates that the bleeding from the ulcer caused her death, but there
are no facts set forth to support that conclusion.  Dr. Gardner indicated at
the outset in his report that Marjorie Dews was an elderly patient with a
bleeding ulcer and related complications, including anemia; however, we are not
told what other health problems she suffered.  Dr. Gardner simply states, AAlso, I have considered the
other potential or possible causes of injury, harm and death to Ms. Dews, and
ruled them out.@  Dr.
Gardner=s report is
similar to the report in Barko v. Genzel, 123 S.W.3d 457 (Tex. App.CEastland 2003, no pet.),
where we held the report was insufficient when the causal relationship was
stated as A[t]hese
violations of the standards of emergency medical practice were a proximate
cause in this patient=s
injury.@  Barko,
123 S.W.3d at 460.








In
Longino, 183 S.W.3d at 918, the court held that a similar expert report
was legally insufficient because A[t]he
report here only states that the delay in diagnosis caused significant and
permanent neurological injuries.  An expert report must show causation beyond
mere conjecture.@  Dr.
Gardner conjectures that Marjorie Dews=s
death would have been prevented if a gastrointestinal specialist had been
consulted or if an upper GI series had been ordered.  Those are mere
conclusions concerning causation.  Appellant=s
third and fourth issues are overruled.

In
her second issue, Dews argues that the trial court abused its discretion in
ruling that Nurse Lovett was not qualified as an expert to give an opinion
regarding whether Palo Pinto Nursing Center departed from the accepted
standards of health care.  The trial court found that Nurse Lovett=s report was legally
insufficient and did not constitute a good-faith effort to comply with the
statutory requirements concerning Dews=s
claim against Palo Pinto Nursing Center.  After reviewing Nurse Lovett=s report and curriculum
vitae, we cannot say that the trial court abused its discretion in its ruling.

Palo
Pinto Nursing Center first argues that Nurse Lovett was not qualified because
neither her report nor her curriculum vitae indicated that she had experience
regarding the specific condition at issue B
the timely diagnosis of a peptic ulcer and/or gastrointestinal bleeding from a
peptic ulcer.  Palo Pinto Nursing Center also criticizes Nurse Lovett=s report as being too
general for it to know exactly what was the standard of care for its nurses and
its administration and how that standard of care was breached.  Nurse Lovett
stated that Palo Pinto Nursing Center=s
registered nurses Ashould
have used a systematic approach to provide individualized, goal directed
nursing care@ by Aperforming nursing
assessments regarding the health status of Ms. Dews.@  Nurse Lovett stated that the nursing staff
noted certain classic symptoms of gastrointestinal bleeding that required Aa full assessment.@  But she did not state
precisely what particular assessments were required, how frequently the
particular assessments were required, or how Palo Pinto Nursing Center=s nurses breached the
standard of care.  She did, however, point out specific nursing interventions
that were not implemented:








[R]egular,
systematic blood pressure, temperature, pulse and respiration monitoring; and
check for blood in stools for bowel movements recorded on 6-16-04 and 6-17-04. 
The nursing staff did not use the data they collected to provide a comprehensive
assessment.  In the absence of a comprehensive nursing assessment,
interventions were delayed or absent.  The nursing staff knew on 6-17-04 that
Ms. Dews= laboratory
studies showed a critical drop in red blood cells to 2.37, a hemoglobin of 7.0
and a hematocrit of 21.1 The nurses knew or should have known this was an
indication of blood loss requiring heightened assessment, reporting to Ms. Dews= physician and emergency interventions. 
This care was not provided to Ms. Dews.

 

Overall, Nurse
Lovett=s report was
too broad for a determination of what the standard of care was for the nurses
and administration of Palo Pinto Nursing Center or how that standard of care
was breached.  

Even
if Nurse Lovett=s
report were to be considered as a good-faith attempt regarding the standard of
care for the nurses and the administration, there was still no good-faith
attempt to meet the causation requirement.  Section 74.351(i) expressly
provides that a claimant may satisfy any requirement of the Act by providing
reports of separate experts.  See Packard v. Guerra, 252 S.W.3d 511
(Tex. App.CHouston
[14th Dist.] 2008, pet. denied); Martin v. Abilene Reg=l Med. Ctr., No.
11-04-00303-CV, 2006 WL 241509, at *4 (Tex. App.CEastland
Feb. 2, 2006, no pet.) (mem. op.).  Nurse Lovett was not qualified to
address the causal relationship between any failure by Palo Pinto Nursing
Center and its nurses and the death of Marjorie Dews.  See Costello v.
Christus Santa Rosa Health Care Corp., 141 S.W.3d 245, 248 (Tex. App.CSan Antonio 2004, no pet.)
(holding that registered nurse was not qualified to express expert opinion as
to cause of patient=s
death).  For the causal relationship, Dews relied on the report of Dr.
Gardner.  For the reasons we discussed in regard to the actions of the doctors,
Dr. Gardner=s report
was not legally sufficient in describing the causal relationship between the
actions of the nurses and administration of Palo Pinto Nursing Center and the
death of Majorie Dews.  Appellant=s
second issue is overruled.

This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

June 11, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.