**Opinion filed October 8, 2009**



In The

# Eleventh Court of Appeals

---

## No. 11-08-00036-CV

---

### HENDRICK MEDICAL CENTER, Appellant

### vs.

### GEORGE CONGER, INDIVIDUALLY AND IN THE
### ESTATE OF MONA CONGER, Appellee

---

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 46656-A**

---

### O P I N I O N

In this health care liability claim, Hendrick Medical Center believed that the expert report filed by George Conger for himself and for the estate of Mona Conger was inadequate, and it filed a motion to dismiss in accordance with the provisions of TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2008). The trial court disagreed with Hendrick and denied the motion. We reverse and remand.

Hendrick challenges the trial court's ruling with two issues. First, Hendrick takes issue with the trial court's failing to dismiss George Conger's claim because he filed an insufficient expert report. In its second issue, Hendrick asserts that the trial court should have dismissed the vicarious

liability claims filed by Conger because the expert report that he filed was insufficient as to those claims.

Mona Conger died after having cardiac bypass surgery at Hendrick. Mona Conger underwent the procedure after testing performed upon her revealed multi-vessel disease.

Following Mona Conger's death, George Conger sued Hendrick alleging that Mona Conger's right subclavian artery had been lacerated during central line placement related to cardiac bypass surgery. George Conger asserted that the laceration resulted in a pleural hematoma and ultimately led to her death. Conger also sued the physician who performed the surgery. The physician is not a party to this appeal.

In his claim against Hendrick, Conger generally says that Hendrick, by and through its agents, employees, vice-principals, and borrowed servants, failed to use the ordinary care that a reasonable and prudent organization in like circumstances would have used in the treatment of Mona Conger. Conger further generally alleges that Hendrick breached that standard of care by "failing to develop, employ, monitor, and follow appropriate policies and procedures with regard to the assessment, treatment, management and oversight of patients" like Mona Conger. Conger also claimed generally that Hendrick failed "to train, employ, retain, supervise, and provide appropriate personnel to carry out" those polices and procedures. "Furthermore, Hendrick Medical Center is vicariously liable under respondent [sic] superior for the acts and omissions of it's [sic] employees."

Specifically, Conger said that Hendrick should have had policies and procedures that addressed the timely interpretation of X-rays that were taken in the Intensive Care Unit following surgery. It also should have had policies and procedures that addressed the importance of monitoring persons like Mona Conger for complications resulting from bypass surgery. Conger alleged that the standard of care would require those policies and procedures and that Hendrick breached that standard by not having them. Finally, he says that the breach directly caused Mona Conger's death.

When a party files a medical malpractice action, he must serve an expert report within 120 days of the filing of the petition. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2008). The report must be authored by an expert. An expert is one who is shown to be qualified by reason of knowledge, skill, training, experience, or education to address the claim. TEX. R. EVID. 702. Additionally, in order to qualify as an expert to opine on the breach of a standard of care, where

2

the defendant is not a physician, the author must show that he meets the qualifications set forth in TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B) (Vernon Supp. 2008).

The proponent of an expert report has the burden to show that the expert is qualified. *Broders v. Heise*, 924 S.W.2d 148, 151-52 (Tex. 1996). The expert report must provide a fair summary of the expert's opinion regarding the applicable standard of care, the manner in which the care rendered failed to meet the standard, and the causal relationship between the failure to meet the standard and the injury. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2008). When the writer of a report merely states the expert's conclusions about the standard of care, breach, and causation, the report does not meet the purposes of the statute. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). If the author of the report omits any of the statutory requirements, the report does not constitute a good faith effort to comply with the statute. *Id*.

A trial court must dismiss a health care liability claim if it determines that the report does not represent a good faith effort to comply with the requirements of the statute. *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Simonson v. Keppard*, 225 S.W.3d 868, 871 (Tex. App.—Dallas 2007, no pet.). However, if a trial court deems that a timely report is deficient, it has the discretion to grant one thirty-day extension during which the proponent of the report can attempt to cure the deficiency. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (Vernon Supp. 2008).

When Conger filed his petition, he attached a medical report by Dr. Steven Thompson. Later, Conger filed an amended report from Dr. Thompson. Conger also filed a report from a nurse, Carrie S. Upton. Hendrick filed a motion to dismiss as provided for by Section 74.351(b). The trial court denied the motion, and this appeal followed.

A trial court's decision to deny a motion to dismiss based on Section 74.351(b) is reviewed for an abuse of discretion. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

3

First, Conger claims that this court has no jurisdiction to hear this appeal. The court's decision in *Lewis v. Funderburk*, 253 S.W.3d 204, 207-08 (Tex. 2008), has resolved that issue, and we have jurisdiction to entertain this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(10) (Vernon 2008).

In its motion to dismiss, Hendrick pointed out to the trial court that the report of Nurse Upton had been served more than 120 days after the petition was filed and was, therefore, not timely. When the trial court denied the motion to dismiss, it denied the motion in its entirety. Therefore, it denied Hendrick's claim that Nurse Upton's report was not timely. Hendrick claims that that denial was error. The record shows that Conger served Nurse Upton's report more than 120 days after the petition was filed; it was not timely. *See* Section 74.351(a). Hendrick's complaint is sustained. The only timely report before the trial court and this court is the amended report from Dr. Thompson.

An "expert report" is a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding (1) applicable standards of care, (2) the manner in which the care rendered failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Section 74.351(r)(6). The report must be signed "by a person with knowledge, training, or experience concerning the applicable standard of care." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008); *see also* Section 74.351(r)(5)(B). "The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances." *McAllen Medical*, 275 S.W.3d at 463 (citing *Palacios*, 46 S.W.3d at 880).

Hendrick complains that Dr. Thompson's report is deficient for several reasons, one of which is that he is not shown to be qualified to render an expert opinion on any of the claims against it.

Dr. Thompson's report shows that he is board certified in internal medicine and that he is an emergency room physician. He has been an intensive care unit "attending" and was also an emergency room medical director. Finally, at the time his report was written, Dr. Thompson was the director of hospitalists and the emergency room physicians at a hospital in Dallas.

Dr. Thompson states in his report: "I am familiar with the diagnosis and treatment of post-operative patients. Thus by education, training and experience I am qualified to render an expert opinion in this matter." He does not say that he is familiar with the formulation of policies and

procedures by hospitals in the ICU setting similarly situated to that situation or circumstance of Hendrick. In his petition, Conger's direct liability claims against Hendrick are limited to its alleged failures in regard to formulation of policies and procedures.

As to the standard of care applicable to Hendrick, Dr. Thompson opines in his report:

> The standard of care for a hospital intensive care unit (ICU) is to provide the safest possible medical outcome for their patients. Specifically, the standard of care for Hendrick Medical Center is to ensure that x-rays are read and interpreted in a timely manner. Timely manner in the ICU setting is immediate. Policies and procedures should have been implemented to create a reproducible pattern to reduce the likelihood that mistakes will be made. Hendrick Medical Center breeched [sic] the standard of care by failure to have policies and procedures in place that would have ensured the timely interpretation of the chest x-ray performed in the Intensive Care Unit. Specifically, the standard of care was breeched [sic] since the chest x-ray was not read or interpreted in a timely manner.

Dr. Thompson also stated:

> Furthermore, either the radiology technician or the ICU staff should have made a cursory review of the chest x-ray. There was a breech [sic] in the standard of care by Hendrick Medical Center employees since nobody reviewed the chest x-ray. The interval change in the chest x-ray would have been obvious to the radiology technician or the ICU Staff. Hendrick Medical Center should have had policies and procedures in place to ensure x-rays are read and interpreted in a timely manner, especially in the ICU setting.

Hendrick argues that it is not established within the four corners of the report that Dr. Thompson has any familiarity, training, or experience that would allow him to opine as to the standard of care in formulating policies and procedures at the hospital level in the ICU. We agree.

Dr. Thompson's qualifications must be shown within the four corners of the report. *Palacios*, 46 S.W.3d at 878. The report shows his experience as a board certified internist, an emergency room physician and director, an ICU "attending," and director of hospitalists and emergency room physicians. Dr. Thompson said nothing in the report about his knowledge, training, or experience concerning the applicable standard of care involved here – the formulation of hospital policies and procedures in an ICU setting. He has not shown himself to be qualified to render an opinion on "what an ordinarily prudent hospital would do under the same or similar circumstances." *McAllen Medical*, 275 S.W.3d at 463 (citing *Palacios*, 46 S.W.3d at 880).

While Dr. Thompson may be qualified to testify as an expert in other areas, we are confined to the four corners of the report, and it is not shown within the four corners of his report that Dr. Thompson is an expert qualified to give an opinion on what an ordinarily prudent hospital would do under these or similar circumstances. *See Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 410-11 (Tex. App.—Fort Worth 2003, no pet.) (record did not show that purported expert had "any special knowledge about what protocols, policies, or procedures a hospital of ordinary prudence, with the Hospital's capabilities, would have had in place"). Dr. Thompson's report is, therefore, deficient as to the direct health care liability claims against Hendrick.

Conger also filed vicarious health care liability claims against Hendrick. It asserts that Dr. Thompson's report fails to name any of the employees for which Conger claims Hendrick is responsible. The report also fails to name the occupation or job descriptions of those alleged to bind Hendrick vicariously except to say, "[E]ither the radiology technician or the ICU staff should have made a cursory review of the chest x-ray." Again, we agree with Hendrick. Not only has Dr. Thompson not set forth his qualifications to give an opinion on the standard of care applicable to radiology technicians and ICU staff, but he also does not say who these people are, what their duties were, why he is familiar with the standard of care applicable to the various persons involved, or what the standard of care is for each different position. He simply gives his opinion that they should have read the X-ray, they did not, and it caused Mona Conger's death. Without setting out at least the job descriptions of those involved in this case (and we are not to be taken as holding that would be enough to satisfy the statute) and for whom and why Hendrick is alleged to be responsible, it would be impossible for Dr. Thompson to state the standard of care applicable to those persons and that he was qualified to give an expert opinion on that standard of care. There is no attempt within the four corners of the report to show that Dr. Thompson had knowledge, training, or experience concerning the standard of care, in an ICU setting, applicable to any member of the staff who might have been involved in the treatment of Mona Conger. Standing alone, the fact that Dr. Thompson is shown to be a physician does not show him to be qualified as an expert with respect to all health care providers. *Broders*, 924 S.W.2d at 153. For the reasons we have stated, the report as to the vicarious liability claims against Hendrick is deficient.

Hendrick argues that there are other reasons why the trial court should have sustained its objections. It argues that, even if Dr. Thompson had been shown to be qualified on the standards of care, his opinions on the breach of those standards of care and the relation of the breach to the cause of death are conclusory. We agree. A conclusory statement is one that expresses a factual inference without stating the underlying facts on which the inference is based. *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008).

Dr. Thompson stated that Hendrick should have implemented policies and procedures to "reduce the likelihood that mistakes will be made." He opines that Hendrick breached that standard of care by failing to have those policies and procedures in place. However, he does not say that he had ever examined the policies and procedures at Hendrick as they relate to the ICU or radiological setting or how he knew that they had no such policies and procedures in place; he simply declares that Hendrick should have had them but did not and that that breach brought about a long chain of medical problems that, one upon the other, ultimately caused Mona Conger's death. Dr. Thompson expresses factual inferences without stating the underlying facts upon which those inferences are based. *See id.*

The same is equally true as to the vicarious claims against Hendrick. Dr. Thompson conclusively states that, if the radiology technician or someone else in the ICU had reviewed the X-ray earlier, Mona Conger could have been returned to surgery earlier and the same long chain of medical problems, one upon the other, would not have occurred and would not have caused Mona Conger's death. Again, Dr. Thompson expresses factual inferences without stating the underlying facts upon which those inferences are based. *See id*.

Hendrick also argues that our decision in *Barko*[1] requires that Dr. Thompson eliminate the heart surgery or heart disease as the cause of the cardiac arrest that precipitated the chain of medical events prior to Mona Conger's death. In *Barko*, the claimant had a prior back surgery. She reinjured her back and went to an emergency room. Dr. Genzel, the physician against whom the health care liability claim was filed, examined her, prescribed pain medication, and advised her to see her neurosurgeon. She later returned to the emergency room, was given more medicine, and again told

---

[1]*Barko v. Genzel*, 123 S.W.3d 457 (Tex. App.—Eastland 2003, no pet.).

to see her neurosurgeon. We held that a medical report in that case was deficient for a number of reasons. As to one of those reasons, we said:

> [T]he reports do not indicate that appellant would have satisfactorily recovered from the back injury but for Dr. Genzel's alleged negligence. The reports do not state that back surgery would have been avoided without Dr. Genzel's alleged negligence. Furthermore, the reports make no attempt to eliminate either the back injury itself or the attempt to surgically repair it as a potential cause of the permanent neurological damage.

*Barko*, 123 S.W.3d at 460-61.

For all of the reasons we have discussed, we hold that the report is deficient to support either the direct health care liability claims or the vicarious liability claims. Hendrick's first and second issues are sustained.

Hendrick has asked us to hold that the report as to the vicarious liability claims is so deficient that it is tantamount to no report. We decline to make that holding. *See Ogletree v. Matthews*, 262 S.W.3d 316, 320, 321 (Tex. 2007) (Expert report did not mention Dr. Ogletree's name, but his conduct was implicated. The report was deficient, not absent, and the trial court could grant an extension).

The Texas Supreme Court has held that, because we have held inadequate a report that the trial court found adequate, the proper disposition of this appeal is to remand to the trial court for it to consider whether to grant Conger a thirty-day extension to cure the defects under Section 74.351(c). *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 670, 671 n.1 (Tex. 2008); *Leland v. Brandal*, 257 S.W.3d 204, 207-08 (Tex. 2008).

This cause is reversed and remanded to the trial court for that court to decide whether to grant a thirty-day extension under Section 74.351(c).

JIM R. WRIGHT
CHIEF JUSTICE

October 8, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8