Opinion filed January 26,
2012 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-11-00141-CV 

                                                    __________

 

                        HENDRICK
MEDICAL CENTER, Appellant

 

                                                             V.

 

                   SHARON
AND STEVE MILLER, INDIVIDUALLY 

            AND AS NEXT
FRIEND OF ANDREW MILLER, Appellees



 

                                   On
Appeal from the 350th District Court

                                                            Taylor
County, Texas

                                                     Trial
Court Cause No. 9119D

 



 

M E M O R A N D
U M   O P I N I O N

 

            This
interlocutory appeal involves a health care liability claim brought by Sharon and
Steve Miller, individually and as next friend of Andrew Miller, their
eight-year-old son, against Hendrick Medical Center.  Hendrick appeals the
trial court’s order overruling (implicitly) its objections to appellees’ expert
reports and denying its motion to dismiss.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). 
We reverse and render in part and reverse and remand in part.

            Hendrick
presents four issues for our review.  In its first issue, Hendrick argues that
the trial court abused its discretion when it found that a sufficient expert
report had been filed and overruled Hendrick’s objections.  Second, Hendrick
alleges that the trial court abused its discretion when it found that a
sufficient expert report had been filed and denied Hendrick’s motion to dismiss
under Section 74.351(b).  Hendrick contends in its third issue that the trial
court abused its discretion when it found that the direct liability claim
asserted against Hendrick was supported by a sufficient expert report and failed
to dismiss the direct claim.  In its final issue, Hendrick alleges that the
trial court abused its discretion when it found that the vicarious liability
claims asserted against Hendrick were supported by a sufficient expert report
and failed to dismiss the vicarious liability claims.

            Although
Hendrick presents these four issues for review at the outset of its brief,
Hendrick combines the issues in its argument and essentially briefs two
issues.  The first issue that Hendrick briefs is whether the trial court erred
and abused its discretion when it found the expert reports were sufficient
under Section 74.351 as to the direct liability claim.  Second, Hendrick
addresses whether the trial court erred and abused its discretion when it found
the expert reports sufficient as to the vicarious claims asserted against
Hendrick.  We will review the issues as briefed and determine whether the trial
court erred when it overruled Hendrick’s objections and denied its motion to
dismiss as to (1) the direct claim and (2) the vicarious claims.     

            We
note at the outset that appellees argue that we should not analyze the direct
liability claim apart from the vicarious liability claims.  However, we will
analyze the claims separately in accordance with this court’s precedent.  See
Hendrick Med. Ctr. v. Conger, 298 S.W.3d 784, 787 (Tex. App.—Eastland
2009, no pet.); Hendrick Med. Ctr. v. Hewitt, No. 11-07-00333-CV, 2008
WL 4439843 (Tex. App.—Eastland Oct. 2, 2008, no pet.) (mem. op.).

            According
to appellees’ petition, Andrew complained to his mother of pain in his left
testicle, which appeared swollen.  Sharon Miller immediately called Andrew’s pediatrician
who advised her to take Andrew to an urgent care facility or to an emergency
room for evaluation.  She took Andrew to Abilene Diagnostic Walk-In Clinic where
the physician told her to take Andrew directly to the emergency room at
Hendrick.  Sharon was advised that testicular torsion was a possible diagnosis,
that time was of the essence in addressing this condition, and that she should
not delay in getting her son to the emergency room.  She drove Andrew to the
emergency room, and they waited for two and one-half hours before being seen by
the emergency room physician.  The emergency room physician ordered a sonogram,
and after the radiologist and the physician reviewed the sonogram, Andrew was
diagnosed with left epididymitis/orchitis, left hydrocele, and bilateral
microlithiasis.  Andrew was discharged from the hospital with prescriptions for
an antibiotic and for pain medicine and with instructions to schedule a urology
follow-up.  Andrew saw a urologist four days later.  The urologist reread the
sonogram that had been performed in the emergency room and determined that it
had been misread.  He diagnosed Andrew with testicular torsion.  The testicle
was no longer viable and had to be surgically removed.

            Andrew’s
parents brought suit against Hendrick, the emergency room physician, and the
radiologist, alleging that each were negligent in treating Andrew.  The
emergency room physician and the radiologist are not parties to this appeal. 
Appellees alleged in their original petition that Hendrick was negligent in one
or more of the following ways, which proximately caused Andrew’s injuries:  (1)
by failing to provide medical care in a timely fashion, given the presentation
of the patient and the well-known consequences of failure to treat testicular
torsion as an urgent diagnosis; (2) by failing to provide medical care in a
timely fashion, given the fact that Sharon initially reported the urgency to
the triage desk and then reminded them of the urgency during the two and one-half
hour waiting period in the emergency room; (3) by failing to have in place a
procedure or protocol that would implement timely emergency medical care for a
child complaining of testicular pain; (4) for the acts of its hospital
employees who were involved in the decision to allow a two and one-half hour
delay between triage and an initial examination by an emergency physician under
respondeat superior liability; and (5) by failing to react appropriately to
concerns expressed by Sharon about Andrew’s condition.

            In
its brief, Hendrick categorizes these allegations into direct and vicarious
claims.  Hendrick asserts that the only direct claim alleged by appellees is
that Hendrick was negligent in failing to have in place a procedure or protocol
that would implement timely emergency medical care.  The other four allegations
are essentially variations of the claim that Hendrick’s staff failed to provide
medical care in a timely fashion and, thus, are vicarious liability claims.  We
will review the claims as categorized by Hendrick.

            Pursuant
to Section 74.351(a), appellees timely served three expert reports prepared by
Dr. James W. Tsung, Dr. Leslie McQuiston, and Dr. Richard M. Cantor.  Hendrick
filed objections to all three reports and, during the hearing, orally moved to
dismiss appellees’ claims based upon its written objections.  The trial court
found the reports to be sufficient and denied Hendrick’s motion to dismiss. 
This appeal followed.

            We
review a trial court’s decision to deny a motion to dismiss under Section
74.351(b) for an abuse of discretion.  Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002); Conger, 298 S.W.3d at 787.  To determine
whether a trial court abused its discretion, we must decide whether the trial
court acted in an unreasonable or arbitrary manner without reference to any
guiding rules or principles.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241–42 (Tex. 1985).

            A
trial court must “grant a motion challenging the adequacy of an expert report
only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an
expert report.”  Section 74.351(l).  The statutory definition requires
that the expert report provide a fair summary of the expert’s opinion regarding
the applicable standard of care, the manner in which the care rendered failed
to meet that standard, and the causal relationship between the failure to meet
the standard of care and the injury suffered.  Id. § 74.351(r)(6).  A
report must be served as to each physician or health care provider against whom
a liability claim is asserted.  Id. § 74.351(a).  However, a plaintiff
may serve multiple reports by separate experts regarding different defendants,
different claims, and different issues, as long as the reports, read together,
provide a fair summary of the standard of care, breach, and causation.  Id. §§
74.351(i), (r)(6); see also Packard v. Guerra, 252 S.W.3d 511, 526
(Tex. App.—Houston [14th Dist.] 2008, pet. denied) (“[S]ection 74.351(i) does
not require that a single expert address all liability and causation issues
with respect to a defendant.”); Martin v. Abilene Reg’l Med. Ctr., No.
11-04-00303-CV, 2006 WL 241509, at *4 (Tex. App.—Eastland Feb. 2, 2006, no
pet.) (mem. op.) (“Section 74.351(i) expressly provides that a claimant may
satisfy any requirement of the Act by providing reports of separate experts.”).

            A
“good faith effort” under Section 74.351(l) “simply means a report that
does not contain a material deficiency.”  Samlowski v. Wooten, 332
S.W.3d 404, 409–10 (Tex. 2011).  If the report fulfills its two purposes, it
represents a good faith effort.   See Am. Transitional Care Ctrs. of Tex.,
Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex. 2001) (“In setting out the
expert’s opinions on each of those elements, the report must provide enough
information to fulfill two purposes if it is to constitute a good-faith
effort.”).  The two purposes of the expert report are to inform the defendant
of the specific conduct the plaintiff has called into question and to provide a
basis for the trial court to conclude that the claims have merit.  Leland v.
Brandal, 257 S.W.3d 204, 206–07 (Tex. 2008) (citing Palacios, 46
S.W.3d at 879).  “In contrast, a report that omits an element or states the
expert’s opinions in conclusory form is not a good faith effort.”  Samlowski,
332 S.W.3d at 410 (citing Palacios, 46 S.W.3d at 879).

            Hendrick
argues that the trial court erred when it overruled its objections and denied
its motion to dismiss because it erroneously found that the expert reports
filed by appellees were sufficient as to the direct liability claim and
vicarious liability claims asserted against Hendrick.  Appellees argue that the
direct claim should not be analyzed separately from the vicarious claims and that
the pleadings should not be micro-analyzed in an effort to devalue the
reports.  In addition, appellees assert that Hendrick is well aware of the
allegations against it, regardless of whether the reports specifically use the words
“procedures and protocols” to address the direct claim.  Furthermore, appellees
assert that, because the reports inform Hendrick of the conduct at issue, the
reports are sufficient.  In support of their argument, appellees point out that,
in general, plaintiffs can amend pleadings and add new theories within a
medical malpractice cause of action as discovery progresses and that plaintiffs
are not limited to only those allegations raised in an original petition.

            This
court has separately evaluated direct liability and vicarious liability claims
to determine whether each claim is supported by a sufficient report under Section
74.351.  See Conger, 298 S.W.3d 784; Hewitt, 2008 WL 4439843. 
The Second, Fifth, Ninth, Thirteenth, and Fourteenth Courts of Appeals have
also evaluated direct and vicarious liability claims separately.[1] 
The First Court of Appeals has held that direct and vicarious claims are
different theories, not separate claims, and that, “if at least one liability
theory within a cause of action is shown by the expert report, then the
claimant may proceed with the entire cause of action against the defendant, including
particular liability theories that were not originally part of the expert
report.”  Certified EMS, Inc. v. Potts, No. 01-10-00106-CV, 2011 WL
1938264, at *7 (Tex. App.—Houston [1st Dist.] May 19, 2011, pet. filed) (op. on
reh’g) (citing Section 74.351(b); Yamada v. Friend, 335 S.W.3d 192, 195–96
(Tex. 2010); and In re Jorden, 249 S.W.3d 416, 421 (Tex. 2008)).  We decline
to follow the First Court’s reasoning and, thus, will evaluate the sufficiency
of the expert reports as to each claim.

            In
its first issue, Hendrick contends that the trial court erred when it failed to
dismiss the direct liability claim because appellees failed to serve upon
Hendrick an expert report addressing the “procedures and protocols” claim.  We
agree.  None of the three experts address appellees’ claim that Hendrick was
negligent by “[f]ailing to have in place a procedure or protocol that would
implement timely emergency medical care for a child complaining of testicular
pain.”  As Hendrick points out, the words “procedure” and “protocol” do not
appear in any of the three expert reports.  

            Although
two of the experts opine that Andrew did not receive timely care, they do not
opine that Hendrick failed to have in place a procedure or protocol that would
implement timely care.  Dr. McQuiston stated in her report that her “greatest
concerns as a surgeon reviewing this file are associated with the delay in the
emergency room evaluation and the missed sonographic diagnosis”; however, she
does not discuss Hendrick’s failure to have in place procedures or protocols.  Dr.
Cantor stated, “[I]n spite of the fact that ischemic damage could have been in
process, [Andrew] was allowed to wait in the waiting room before evaluation for
a period of over 2½ hours.”  He also stated that the standard of care was to
“[p]rovide expeditious evaluation and treatment for an ongoing ischemic event”
because “[d]elays in evaluation of this process result in a much higher
probability of cell death in the ischemic target organ” and to “[p]rovide timely
and expedient remedy of the situation to save salvageable tissue.”  Dr. Cantor
further stated that Hendrick and the hospital staff breached the standard of
care by failing “to provide expeditious triage and placement in an examination
room” and failing “to provide accurate and timely recognition of abnormal
sonographic finding.”  However, none of these statements are sufficient to inform
Hendrick of its failure to have in place a procedure or protocol that would
implement timely medical care.  Dr. Tsung does not address the timeliness of
the emergency medical care in his report.

            In Hendrick
Medical Center v. Hewitt, we held that the trial court abused its
discretion in failing to dismiss Hewitt’s direct claims against Hendrick
because the expert reports failed to address those claims.  2008 WL 4439843, at
*2.  The same is true here.  Therefore, we hold that appellees did not file an
expert report as to the direct liability claim and that the trial court abused
its discretion when it did not dismiss that claim.  Hendrick’s first issue on
appeal is sustained, and the direct liability claim regarding “procedures and
protocols” is dismissed.  Because there was no expert report filed regarding
the direct liability claim, we remand the issue to the trial court for it to
determine the amount of attorney’s fees to award Hendrick in connection with
the dismissed claim.  See § 74.351(b).

      In
addition to the direct claim, appellees filed vicarious health care liability
claims and generally asserted that Hendrick failed to provide medical care in a
timely fashion when its employees allowed a two and one-half hour delay between
triage and an initial examination by an emergency physician.  Hendrick alleges
that the three expert reports were insufficient with respect to the vicarious
liability claims asserted.  Specifically, Hendrick argues that
none of the experts stated how they were qualified to render opinions as to
Hendrick or its hospital staff.  In addition, Hendrick asserts that the experts
failed to identify specific hospital personnel that were involved in the
alleged two and one-half hour delay in medical care.  Hendrick also contends
that the experts’ opinions regarding standard of care, breach, and causation
were conclusory and, thus, deficient under Section 74.351(r)(6).

            We
will first address Hendrick’s argument that the reports are insufficient to
support the vicarious liability claims against Hendrick because none of the experts
identified the specific hospital personnel involved in Andrew’s care.  In Hendrick
Medical Center v. Conger, we held that the expert report was deficient as
to Conger’s vicarious liability claims because the expert did not state in his
report which members of the hospital staff were involved in Conger’s care, what
the individual staff members’ duties were, what the standard of care was for
each staff position, or how he was familiar with the applicable standards.  298
S.W.3d at 789.  Hendrick alleges that the expert reports here are deficient for
the same reasons.  We agree.  

            Dr.
Tsung and Dr. Cantor globally address the standard of care for Hendrick and its
hospital staff but do not specify what types of employees were involved in
Andrew’s care, what the standard of care was for each of those positions, or
how those employees breached the applicable standard.  Dr. McQuiston only addresses
causation in her report.  We stated in Conger that, “[w]ithout setting
out at least the job descriptions of those involved in this case . . . and for
whom and why Hendrick is alleged to be responsible, it would be impossible for
[the expert] to state the standard of care applicable to those persons and that
he was qualified to give an expert opinion on that standard of care.”  Id. 
Here, none of the experts stated which employees, or even what type of
employees (i.e., triage personnel, administrative personnel, nurses, nurse
practitioners, physicians’ assistants, etc.), were responsible for the delay in
medical treatment.  Without knowing for whom and why Hendrick is alleged to be
responsible, or at least what types of employees Hendrick is alleged to be
responsible, we cannot determine from the reports whether any of the experts
are qualified to render an opinion as to those individuals.  We also cannot
determine from the reports whether the reports provide a fair summary of the
expert’s opinion regarding the applicable standard of care, breach, and
causation as required under Section 74.351(r)(6).

            We hold
that the reports as to the vicarious liability claims against Hendrick are
deficient.  Hendrick’s second issue is sustained.

            When
a report found sufficient by the trial court is found insufficient by an
appellate court, the appellate court may remand the case to the trial court for
consideration of whether to grant a thirty-day extension.  Leland, 257
S.W.3d at 205, 207–08; Conger, 298 S.W.3d at 790.  Because we have found
the expert reports to be insufficient as to the vicarious liability claims
against Hendrick, we reverse and remand this case to the trial court to
determine whether to grant a thirty-day extension of the deadline for filing
expert reports under Section 74.351(c) in order to allow appellees to address
the deficiencies.

            We
reverse the judgment of the trial court and render judgment dismissing the
direct liability claim.  We remand this case to the trial court for a
determination of attorney’s fees to be awarded to Hendrick in connection with
the dismissed claim and for a determination of whether to grant appellees a
thirty-day extension in order to cure the deficiencies of the expert reports in
connection with the vicarious liability claims.

 

                                                                                                

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

January 26, 2012

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









[1]See, e.g., TTHR
Ltd. P’ship v. Moreno, No. 02-10-00334-CV, 2011 WL 2651813 (Tex. App.—Fort
Worth July 7, 2011, pet. filed) (mem. op. on reh’g,) (holding that plaintiff
was required to serve an expert report as to each of the direct liability
claims and the vicarious liability claims); River Oaks Endoscopy Ctrs.,
L.L.P. v. Serrano, No. 09-10-00201-CV, 2011 WL 303795 (Tex. App.—Beaumont
Jan. 27, 2011, no pet.) (mem. op.) (holding the trial court abused its
discretion in denying the motion to dismiss the direct claims because the expert
report failed to implicate direct claims even though it implicated vicarious
claims); Petty v. Churner, 310 S.W.3d 131 (Tex. App.—Dallas 2010, no
pet.) (holding trial court did not abuse its discretion when it dismissed the
direct liability claims because the reports did not address those claims); RGV
Healthcare Assocs., Inc. v. Estevis, 294 S.W.3d 264 (Tex. App.—Corpus
Christi 2009, pet. denied) (holding expert report was deficient as to direct
liability claims because it did not address how the healthcare provider’s
direct conduct deviated from the applicable standard of care); Obstetrical
& Gynecological Assocs., P.A. v. McCoy, 283 S.W.3d 96, 103 (Tex.
App.—Houston [14th Dist.] 2009, pet. denied) (stating that, if plaintiff had
asserted direct claims, then plaintiff would be required to serve an expert
report specifically addressing the direct claims in addition to a report
addressing the vicarious claims).