# NO. 12-12-00393-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *NACOGDOCHES COUNTY HOSPITAL DISTRICT D/B/A NACOGDOCHES MEMORIAL HOSPITAL, APPELLANT* | *§* | *APPEAL FROM THE 145TH* |
| | *§* | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *ROLAND FELMET, APPELLEE* | *§* | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Nacogdoches County Hospital District d/b/a Nacogdoches Memorial Hospital appeals the trial court's order denying its motion to dismiss Roland Felmet's medical malpractice suit. In its sole issue on appeal, the Hospital alleges that the trial court abused its discretion in denying its motion because Felmet failed to satisfy the expert report requirements under Chapter 74 of the Texas Civil Practice and Remedies Code. We reverse and remand.

### BACKGROUND

Felmet filed a medical malpractice suit against the Hospital and several other health care providers. Felmet nonsuited all defendants except the Hospital. Because Felmet's claim is a health care liability claim, he timely filed an expert report. Felmet's expert, Lige B. Rushing, Jr., M.D., stated in his report that Felmet underwent surgery on April 29, 2010. Felmet's recovery was not proceeding according to plan, and on May 6, 2010, he presented to the emergency room at the Hospital reporting pain and a fever. Upon examination, hospital staff discovered a large fluctuant mass on Felmet's left buttock. Dr. Rushing noted that a computerized tomography scan revealed a large perirectal abscess "with some air in the abscess and tracking anteriorly." According to Dr. Rushing, Felmet's treating physician, Gregory McClain, M.D., requested an

operating room at the Hospital so that he could treat the abscess.  Dr. Rushing alleged that the Hospital denied Dr. McClain's request, or at least delayed the procedure until the following morning at 7:45 a.m.  As a result of this delay, Dr. Rushing asserts, Felmet's condition progressed, resulting in several complications, unnecessary surgical procedures, and needless pain and suffering.

The Hospital filed a motion to dismiss Felmet's claim against it.  In the motion, the Hospital alleged that (1) Dr. Rushing failed to demonstrate his qualifications to render an expert opinion regarding hospital administration policies and procedures in making operating rooms and times available, and (2) that the report failed to state the applicable standard of care or show how the alleged breach of the standard of care caused his unnecessary surgeries and prolonged pain and suffering.  After a hearing, the trial court denied the Hospital's motion.  This interlocutory appeal followed.

## EXPERT REPORT

The Hospital raises one issue on appeal, divided into four subissues.  In its first subissue, the Hospital argues that Dr. Rushing failed to demonstrate his qualifications to render an expert opinion regarding the basis of Felmet's claim.  In its second, third, and fourth subissues, the Hospital contends that Dr. Rushing failed to adequately set forth the applicable standard of care as it relates to Felmet's claim, show how the Hospital allegedly breached that standard of care, and establish how the breach caused his injuries.  Since these subissues are related, we address them together.

**Standard of Review**

We review a trial court's ruling on a motion to dismiss for failure to comply with the expert report requirements under Chapter 74 for an abuse of discretion.  *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex. 2001).  A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles.  *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003).  A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall,* 107 S.W.3d 805, 807 (Tex. App.—Texarkana 2003, no pet.).  To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly.  *In re Sw. Bell Tel. Co.,* 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Kuntz,* 124 S.W.3d 179, 181 (Tex.

2

2003)).  We may not substitute our judgment for that of the trial court.  *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

**Expert Report Requirement**

An "expert report" is a written report that provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the defendant failed to meet those standards, and the causal relationship between the defendant's failure and the plaintiff's injury, harm, or damages claimed.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.35l(r)(6) (West Supp. 2013).  In setting out the expert's opinions on each of the required elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort.  *Palacios,* 46 S.W.3d at 879.  An objective good faith effort to comply with the statute is made if the report (1) informs the defendant of the specific conduct that the plaintiff has called into question and (2) allows the trial court to conclude that the claim has merit.  *Id.*

A report that merely states the expert's conclusions about the standard of care, breach, and causation does not provide the necessary information to fulfill the dual purposes.  *Id.* Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mental Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  In our review of an expert report, we are limited to the report's contents, contained within the four corners of the report, in determining whether the report manifests a good faith effort to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l* ); *Palacios,* 46 S.W.3d at 878.

However, a plaintiff need not present evidence in the report as if it were actually litigating the merits.  *Palacios,* 46 S.W.3d at 879.  The report can be informal, meaning that it does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial.  *Id.*

**Expert Qualifications**

To qualify as an expert witness on the issue of whether a health care provider departed from the accepted standards of care, a witness must (1) practice health care in a field of practice that involves the same type of care or treatment as that delivered by the health care provider, if the health care provider is an individual, at the time the testimony is given, or was practicing that type of health care when the claim arose, (2) have knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition

involved in the claim, and (3) qualify on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b) (West 2011).

To determine whether a witness is qualified, we consider whether the witness is (1) certified by a state licensing agency or national professional certifying agency or has other substantial training or experience in the area of health care relevant to the claim and (2) actively practicing health care in rendering health care services relevant to the claim. *See id.* § 74.402(c). We also examine the witness's report and curriculum vitae in making this assessment. *See Caviglia v. Tate,* 365 S.W.3d 804, 810 (Tex. App.—El Paso 2012, no pet.). Not every licensed doctor is qualified to testify on every medical question, but we must be careful not to draw expert qualifications too narrowly. *Adeyemi v. Guerrero,* 329 S.W.3d 241, 247 (Tex. App.—Dallas 2010, no pet.). The proponent of an expert report has the burden to show that the expert is qualified. *Broders v. Heise,* 924 S.W.2d 148, 151–52 (Tex.1996).

**Standard of Care, Breach, and Causation under Chapter 74**

Identification of the standard of care in a report is critical for determining whether a defendant breached a duty. *CHCA Mainland, L.P. v. Burkhalter,* 227 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances. *See Palacios,* 46 S.W.3d at 880. An expert's report must put the defendant on notice of the complained-of conduct and what it should have done differently. *See id.* It should state clearly the care that was expected, but not given. *Id.* "It is not sufficient for an expert to simply state that he or she knows the standard of care and concludes it was [or was not] met." *Id.*

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.,* 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Merely providing some insight into the plaintiff's claims does not adequately address causation. *Wright,* 79 S.W.3d at 53. Accordingly, causation cannot be inferred; it must be clearly stated. *Castillo v. August,* 248 S.W.3d 874, 883 (Tex. App.—El Paso 2008, no pet.). Indeed, we may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Austin Heart, P.A. v. Webb,* 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.).

## Dr. Rushing's Qualifications

In his report, Dr. Rushing states that he is a physician practicing internal medicine, rheumatology, and geriatrics. Dr. Rushing mentions that he currently maintains an office at the Presbyterian Professional Building I, and that he is an attending staff physician at Presbyterian Hospital in Dallas, Texas. In Dr. Rushing's curriculum vitae, he states that he served as President of Medical Staff at Presbyterian from 1983 to 1984, was a former member of the ethics committee at Presbyterian, and was the Chairman of the Bylaws Committee at Presbyterian from 1989 to 2010. Dr. Rushing does not explain in his report how these positions relate to Felmet's claim that the hospital failed to timely provide an operating room.

Dr. Rushing also states in his report that he has experience in diagnosing and treating perirectal abscesses. In fact, his report focuses on the severity of a perirectal abscess and the need for quick treatment from the perspective of the treating physician. Dr. Rushing does not address Felmet's claim from the standpoint of the Hospital and explain how an ordinary and prudent hospital would have allocated its resources under the same or similar circumstances. The basis of Felmet's claim is that the Hospital failed to honor Dr. McClain's request for an operating room in a timely manner. Yet, nowhere in the report does Dr. Rushing state that he is familiar with hospital administration protocols in scheduling surgeries, nor does he describe the procedures a hospital and its administrators would utilize to determine which patients competing for surgery obtain an operating room first.

Merely working at a hospital and serving on hospital committees does not automatically qualify an expert to testify on matters of operating a hospital. *See Tenet Hospitals Ltd. v. Love*, 347 S.W.3d 743, 750-51 (Tex. App.—El Paso 2011, no pet.) (holding that physician expert failed to demonstrate qualifications to opine on hospital administration procedures regarding staffing physician specialists and transferring patients) (citing *Christus Health Se. Tex. v. Broussard*, 267 S.W.3d 531, 536 (Tex. App.—Beaumont 2008, no pet.) (holding that physician failed to show how his service on committees at hospital qualified him to opine on matters related to hospital administration standards)); *see also Hendrick Med. Ctr. v. Conger*, 298 S.W.3d 784, 788-89 (Tex. App.—Eastland 2009, no pet.) (holding physician did not show qualifications to opine on hospital procedures in timely reading chest x-ray in an intensive care unit setting, which could have prevented patient's death). In addition to stating his experience, the expert must explain how his experience relates to the basis of the claims presented. *See Love*,

347 S.W.3d at 750-51. Based on our review of his report, we conclude that Dr. Rushing has failed to demonstrate that he is qualified to render an expert opinion on the Hospital's alleged failure to follow the standard of care for making an operating room available in a timely manner.

**Standard of Care, Breach, and Causation**

The Hospital also argues that Dr. Rushing failed to adequately identify the standard of care from the perspective of the Hospital, did not adequately describe how the Hospital breached the standard of care, and did not sufficiently describe how the breach caused his injuries. Felmet argues that the report met the applicable standards under Chapter 74, and that he need not marshal all his proof as if he were litigating the merits at trial. While we agree with that statement of the law, we likewise cannot make inferences or fill in gaps within the report to guess what the expert meant or intended. *See Webb,* 228 S.W.3d at 279.

Dr. Rushing stated that Felmet was admitted to the Hospital, but does not disclose when Felmet was admitted. Dr. Rushing also stated that because of Felmet's condition, Dr. McClain needed to operate on Felmet immediately. However, the surgery was not performed until 7:45 a.m. the following morning. Dr. Rushing continued in his report as follows:

> Because immediate surgery was not performed[,] the abscess was permitted to get progressively worse during the period of time Dr. McClain had to wait before he could operate. This delay was a proximate cause of the multiple surgical procedures following the initial diagnosis of Mr. Felmet's perirectal abscess. If Dr. McClain had been permitted to operate on Mr. Felmet in a timely manner[,] then more likely than not based on a reasonable medical probability he would not [have] experienced the multiple complications and multiple surgeries. As a result of his multiple surgeries[,] Mr. Feldman was subjected to a great deal of pain and suffering.

Dr. Rushing went on to conclude that, "in order to meet the standard of care, [the Hospital] should have provided an emergency operating room and operating time for Dr. McClain to operate on Mr. Felmet[, and its failure to do so] fell below the accepted standard of care . . . ." Other than discussing his qualifications and the underlying facts of Felmet's claim, there is nothing else related to the standard of care, breach, and causation in Dr. Rushing's report.

Contrary to Dr. Rushing's ultimate conclusion, the Hospital did provide an operating room and time for Felmet. As Dr. Rushing stated in his report, the basis of Felmet's claim is that an operating room and time should have been provided earlier so that Felmet could have avoided his unnecessary subsequent surgeries and the pain and suffering he endured along the way.

6

According to Dr. Rushing, the timing of the surgery was the critical factor. As we stated earlier, Dr. Rushing focuses on the need for immediate surgery from the treating physician's perspective. He does not describe the Hospital's allocation of resources from the standpoint of the administrators or healthcare providers making the decision as to which patients receive priority for its resources. Nor does he discuss whether the Hospital had an operating room available at the time surgery was requested, which is a critical factor in the Hospital's liability under the facts presented.

Dr. Rushing also claims that Felmet had several unnecessary surgeries because of the delay. Based on Dr. Rushing's report, we know that less than thirty-two hours passed from the time Felmet arrived at the Hospital to the time he had surgery. We do not know from the report whether the delay was closer to eight hours or to thirty-two hours. Therefore, it is impossible to tell at what point all, or even some, of these surgeries could have been avoided based on the report. Dr. Rushing implies that if surgery had been performed immediately, all of Felmet's subsequent surgeries would have been avoided. But he says so in a conclusory manner, without discussing whether surgery could have been performed at the relevant time. He merely states that it should have been conducted in a "timely" manner, without further describing at what point surgery became critical when analyzed from the Hospital's perspective.

In sum, Dr. Rushing does not discuss the objective practices and procedures a hospital of ordinary prudence would have employed in making operating rooms and other necessary resources available for surgery under the same or similar circumstances. He also does not explain how the deviation from those standards led to Felmet's subsequent surgeries. Therefore, we hold that Dr. Rushing failed to adequately discuss the standard of care, breach of that standard, and causation. *See Love*, 347 S.W.3d at 753-56.

The Hospital's sole issue is sustained.

## DISPOSITION

Having sustained the Hospital's sole issue, we *reverse* the order of the trial court denying the Hospital's motion to dismiss. We *remand* the cause so that the trial court may decide whether to grant a thirty day extension, or alternatively, to dismiss the suit and award the Hospital its reasonable attorney's fees and costs of court. *See id.* at 757.

7

**BRIAN HOYLE**
Justice

Opinion delivered November 26, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### NOVEMBER 26, 2013

### NO. 12-12-00393-CV

### NACOGDOCHES COUNTY HOSPITAL DISTRICT D/B/A
### NACOGDOCHES MEMORIAL HOSPITAL,
Appellant
V.
### ROLAND FELMET,
Appellee

---

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C1228289)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*